IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hil Rizvi, M.D.,                              :
                                             :
                    Petitioner               :
                                             :
              v.                             :   No. 1378 C.D. 2018
                                             :   Submitted:  July 26, 2019
Bureau of Professional and                   :
Occupational Affairs, State Board            :
of Medicine,                                 :
                                             :
                    Respondent               :

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                       FILED:  May 1, 2020


Hil Rizvi, M.D. (Doctor) petitions for review of the order of the Bureau of Professional and Occupational Affairs (Bureau), State Board of Medicine (Pennsylvania Board) adopting, in part, the report of its hearing examiner and revoking Doctor's license to practice as a medical physician and surgeon in the Commonwealth.  We affirm.

Doctor is a Pennsylvania resident and has had a license to practice medicine and surgery in Pennsylvania since 1996.  On August 18, 2016, the Bureau issued a two-count Order to Show Cause alleging that Doctor is subject to disciplinary action by the Pennsylvania Board under the reciprocal disciplinary provisions of Section 41(4) of the Medical Practice Act of 1985 (Act),[1] as a result

---

[1] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §422.41(4).  Section 41(4) of the Act states, in relevant part:

**(Footnote continued on next page…)**

of having had an application for a license to practice medicine refused by the State of Maine Board of Licensure in Medicine (Maine Board), and a license to practice medicine revoked by the State Medical Board of Ohio (Ohio Board).

Doctor filed a timely answer to the Order to Show Cause and requested a hearing. On January 23, 2018, a formal hearing was conducted before a Board Hearing Examiner at which both parties presented evidence.

The Board entered into evidence Exhibit C-1, the record of the Maine Board's disciplinary proceedings, which included its November 10, 2014 Decision and Order denying Doctor's application for licensure pursuant to the provisions of the relevant Maine statute. The Maine Board's decision was based on Doctor's: (1) misrepresentation on his application that his Utah license to practice had expired when, in fact, he agreed with the Utah Board to allow his license to expire based on his failure to "exercise reasonable diligence" in reporting information on his application for licensure; (2) failure to disclose that he entered into a "Stipulation and Order" with the Utah authorities in which he admitted that he should have "exercised reasonable diligence" in reporting information on his

---

**(continued…)**

> The Board shall have authority to impose disciplinary or corrective measures on a board-regulated practitioner for any . . . of the following reasons:
>
> * * *
>
> (4) Having a license or other authorization to practice the profession revoked or suspended or having other disciplinary action taken, or an application for a license or other authorization refused, revoked or suspended by a proper licensing authority of another state[.]

2

application submitted to the Utah Board, that he was negligent in not providing accurate information on his application, and that an appropriate basis existed to take action against his license to practice medicine; (3) misrepresentation that he had successfully completed a residency program at St. Elizabeth Health Center when, in fact, he only attended the program for six months; (4) misrepresentation that he successfully completed a residency program at Guthrie/Robert Packer Hospital without any negative reports by instructors for behavioral reasons; (5) engaging in unprofessional conduct by raising his voice and using profanity during a telephone conversation with the Maine Board's Executive Director; and (6) committing fraud and deceit by failing to notify the Maine Board of his arrest on a warrant for Assault, Disorderly Conduct, and Malicious Destruction of Property, and his indictment for Abuse, Assault, and Neglect of a Minor. *See* Certified Record (C.R.) Item 26 at 5-6.

The Board also entered into evidence Exhibit C-2, the record of the Ohio Board's disciplinary proceedings, which included its June 8, 2016 Decision and Order permanently revoking Doctor's certificate to practice medicine pursuant to the provisions of the relevant Ohio statute. The Ohio Board's decision was based on Doctor's failure to report on his Ohio license renewal application the action by Maine's Board on his Maine licensure application. *See* C.R. Item 26 at 6-7.

On May 18, 2018, the Pennsylvania Board's Chief Hearing Officer issued an Adjudication and Order recommending that Doctor's license to practice as a medical physician and surgeon in the Commonwealth be indefinitely suspended, reasoning as follows:

> The Ohio Board is the only board at issue in the Commonwealth's [Order to Show Cause] that imposed a

3

*disciplinary sanction* against [Doctor] after he became licensed in Pennsylvania. There is no dispute that the Ohio Board Revoked [Doctor's] license; however, revocation is an extreme sanction that should be exercised in only the most egregious cases because it represents a termination of the right to practice as a professional without a promise of restoration at any future time. [Doctor's] licensure difficulties in the States of Maine and Ohio are ones that seemingly can be mended over time. By his own testimony, [Doctor] has not taken any steps to address his revocation in Ohio. Until then, the hearing examiner recommends that [Doctor's] license to practice medicine and surgery in the Commonwealth be indefinitely suspended until his license to practice medicine and surgery in the State of Ohio is restored to active, unrestricted, non-probationary status, consistent with the terms of the attached Order. Pennsylvania's citizens deserve no less protection than the citizens of Maine, whose medical board will not license [Doctor], and Ohio.

C.R. Item 26 at 16 (emphasis in original). Doctor filed exceptions to the Chief Hearing Officer's Adjudication and Order with the Pennsylvania Board.

On September 12, 2018, based on the record established before the Chief Hearing Examiner, the Pennsylvania Board issued a Final Memorandum Order, which adopted the Chief Hearing Examiner's Adjudication with respect to its history of the matter, findings of fact, conclusions of law, and discussion up to the sanction to be imposed. Rather, the Pennsylvania Board explained the distinction between the Ohio statute and the Act is that the Ohio statute authorizes the Ohio Board to permanently revoke Doctor's license, while Section 43(a) of the Act, 63 P.S. §422.43(a), "provides an explicit statutory path for a licensee to seek the reinstatement of a revoked license to active status after the passage of five (5) years." C.R. Item 30 at 6. As a result, the Pennsylvania Board found Doctor's "second exception to be valid and decline[d] to impose the sanction imposed by the

4

hearing examiner." *Id.* The Pennsylvania Board noted that Doctor "does not dispute the fact of the denial of his license in Maine and the revocation of his license in Ohio," concluding that "there is no question that [Doctor] is in violation of [S]ection 41(4) of the [Act] and therefore the [Pennsylvania] Board is authorized to impose disciplinary sanctions." *Id.*

In formulating the sanction to be imposed, the Pennsylvania Board stated the following:

> Both the Ohio Board and the Maine Board have, through their licensure actions, prohibited [Doctor] from practicing within their jurisdictions; Maine by denying a license to practice, Ohio by revoking his license. Pennsylvania's [Act] permits the [Pennsylvania] Board to impose sanctions upon [Doctor] based on either the imposition of discipline or the refusal of a license application. *See* [S]ection 41(4) of the Act, 63 P.S. §422.41(4). There is a clear concern implicit in the actions of both the Maine and Ohio [B]oards which is also shared by this [Pennsylvania] Board – the conduct of a licensee who does not provide complete and truthful responses to a licensing board, who does not update the [B]oard as required regarding the filing of criminal charges, who makes omissions and commissions on multiple occasions and with regard to multiple licensing boards over an extended period of time, is essentially an individual who cannot be effectively regulated by the [Pennsylvania] Board.
>
> Such a pattern of conduct with one's own licensing [B]oards calls into question how [Doctor] would respond in the face of adverse facts which might involve patient care. It is not unreasonable to suspect that [Doctor] might act in a similar manner by providing false or incomplete information or even omitting information in response to inquiries from peers, patients, or courts if [Doctor] realized that disclosure of unflattering facts might be required. One of the primary purposes of a licensing board is to seek to protect the public from

5

future harm at the hands of a licensee. The [Pennsylvania B]oard believes it must do so in this case.

The legislature has set a five (5) year ban on the [Pennsylvania] Board considering a request for reinstatement after revocation of a license. That period appears to correspond appropriately with the time which would be necessary for [Doctor] to take appropriate steps to seek assistance in understanding and modifying his behaviors so that he no longer attempts to obfuscate and hide negative personal and professional information when disclosure is required. It will also permit [Doctor] the necessary time to establish those new behaviors as habits, and to generate an appropriate record of conduct which this [Pennsylvania] Board may subsequently use to determine that the behavior modifications have truly become ingrained in [Doctor's] daily life.

C.R. Item 30 at 9-10.

Accordingly, the Pennsylvania Board issued the instant order revoking Doctor's license to practice as a medical physician and surgeon in the Commonwealth for five years. C.R. Item 30 at 11-12. The Pennsylvania Board ordered that, as provided for in Section 43(a) of the Act, 63 P.S. §422.43(a), "after the expiration of at least five (5) years from the effective date of this Order, [Doctor] may apply for the reinstatement of his authorizations to practice the profession, but shall be required to meet all licensing requirements." C.R. Item 30 at 11. The Board further ordered that, at the time of application for reinstatement, Doctor shall undergo a mental and physical fitness evaluation by an approved nationally-recognized re-entry to practice program. *Id.* Doctor then filed the instant petition for review.[2]

---

[2] Doctor also filed an Emergency Motion for Stay Pending Appeal, which this Court granted by October 22, 2018 order following argument.

6

On appeal, in the Statement of Questions Involved portion of the Second Amended Brief for Appellant,[3] Doctor asserts that the stay pending appeal "should be made permanent," and that "the Board's Final Order of [his] medical license revocation should be reversed and his medical license reinstated with or without restrictions on his medical privileges, with or without penalty." Second Amended Brief for Appellant at 7.[4] However, the foregoing claims fail to state or

---

[3] As this Court has explained:

> The Board is the agency charged with the responsibility and authority to oversee the medical profession and to determine the competency and fitness of an applicant to practice medicine within the Commonwealth. The state has the right to regulate and license professionals to protect the public health; and an applicant for licensure bears the burden of proving that he or she meets the qualifications for obtaining a license to practice a profession or occupation. Furthermore, an individual has no vested right to practice medicine within the Commonwealth.
>
> As the ultimate factfinder, the Board may accept or reject the testimony of any witness in whole or in part, and this Court is bound by the credibility determinations made by the Board. When reviewing a decision by the Board, this Court may not reweigh the evidence presented or judge the credibility of witnesses. Moreover, the Board contains medical doctors and the Secretary of Health pursuant to Section 3 of the [Act], 63 P.S. §422.3; and it is empowered to make determinations and draw conclusions on factual issues without resorting to additional medical testimony.

*Barran v. State Board of Medicine*, 670 A.2d 765, 767-68 (Pa. Cmwlth. 1996) (citations omitted). This Court's "review of the Board's order is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence." *Id.* at 767 n.3 (citations omitted).

[4] Pa. R.A.P. 2111(a)(4) provides that "[t]he brief of the appellant . . . shall consist of the following matters, separately and distinctly entitled and in the following order: Statement of the questions involved." In turn, Pa. R.A.P. 2116(a) states, in relevant part:

**(Footnote continued on next page…)**

7

fairly suggest any specific factual or legal issue for this Court to decide in this appeal. Accordingly, Doctor has failed to preserve any of the issues presented in the Argument portion of his appellate brief for our review. *See, e.g.*, *Anderson v. Anderson*, 544 A.2d 501, 506 n.7 (Pa. Super. 1988) ("Appellant also includes in his brief a short argument to the effect that, even if the court had the power to act as it did, it abused its discretion in doing so. This argument has not been preserved for our consideration, however, as appellant has failed to designate it as an issue in the Statement of Questions Involved in his brief and the issue cannot fairly be said to be suggested by the Statement of Questions, which frames appellant's first issue as an allegation that the court committed an error of law. Pa. R.A.P. 2116(a).").[5]

Moreover, overlooking Doctor's waiver of all of his appellate claims, our review of the issues contained in the Argument portion of his appellate brief do not demonstrate any reversible Board error. The first two issues that Doctor raises in his brief attack the penalty imposed by the Chief Hearing Officer. *See* Second Amended Brief for Appellant at 16-17.

---

**(continued…)**

> The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.

[5] *See also Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa. Super. 2005) ("Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.") (citations omitted).

8

However, as outlined above, the Pennsylvania Board modified the indefinite suspension of Doctor's license imposed by the Chief Hearing Officer to a revocation of Doctor's license to practice as a medical physician and surgeon in the Commonwealth for five years, and it is the Pennsylvania Board's order that is the order under review in the case *sub judice*, not the proposed penalty suggested by the Chief Hearing Officer in her Adjudication. *See* Section 41 of the Act, 63 P.S. §422.41 ("The board shall have authority to impose disciplinary or corrective measures on a board-regulated practitioner[.]"); Section 16.57(a)(1) of the Pennsylvania Board's regulations, 49 Pa. Code §16.57(a)(1) ("Upon application for review by any party or upon the Board's own motion, the Board will review the hearing examiner's decision."); Section 16.58 of the Pennsylvania Board's regulations, 49 Pa. Code §16.58 ("The respondent may, within 30 days from the date of the decision of the Board, appeal to the Commonwealth Court under 2 Pa. C.S. §702 (relating to appeals)."). Further, the Pennsylvania Board is entitled to disagree with the Chief Hearing Officer's proposed order and to impose its own sanction. *See Telang v. Bureau of Professional and Occupational Affairs*, 751 A.2d 1147, 1152 (Pa. 2000) ("[I]t was the sole task of the Medical Board to determine what sanction, including possible revocation, fit the offense, which the Medical Board had full and final statutory authority to do. 63 P.S. §422.41(4)."). As a result, Doctor's first two allegations of error are patently without merit.

The next two issues that Doctor raises in his appellate brief attack the underlying disciplinary measures imposed by the Ohio Board and the Maine Board and, he asserts, do not relate to the quality of care given to his patients. *See* Second Amended Brief for Appellant at 17-23. He contends that because the Pennsylvania Board's action in this case is based on these improper out-of-state

9

disciplinary proceedings and does not relate to patient care, its order in this case is capricious and constitutes bad faith and an abuse of power. *Id.* at 23.

However, as Doctor acknowledges, the procedural and substantive validity of the discipline imposed by the Ohio Board and Maine Board, and the quality of Doctor's care, are immaterial in the instant disciplinary proceeding by the Pennsylvania Board pursuant to reciprocal disciplinary provisions of Section 41(4) of the Act. *Tandon v. State Board of Medicine*, 705 A.2d 1338, 1345 (Pa. Cmwlth. 1997); *Johnston v. State Board of Medical Education and Licensure*, 410 A.2d 103, 105-06 (Pa. Cmwlth. 1980). Accordingly, these two allegations of Board error are likewise without merit.

Finally, Doctor asserts that "[e]ven if the sanction imposed was not an abuse of discretion[6] (which it is), the burden for [him] to eventually be re-licensed in Pennsylvania is unduly and unreasonably onerous." Second Amended Brief for Appellant at 23. He submits, "In short, the draconian overreaching of the licensure reinstatement process imposed in the [Pennsylvania Board's] Order, simply underscores the abuse of discretion inherent in the substance of the sanction itself." *Id.* at 24.

As the Pennsylvania Supreme Court has explained:

> [T]he proper review of the agency's action, assuming that
> it is not defective under the self-explanatory requirements
> of the Administrative Agency Law, [2 Pa. C.S. §§501-

---

[6] "An abuse of discretion is more than just an error in judgment . . . ." *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996). An abuse of discretion occurs where the "judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Id.* To be arbitrary and capricious, there must be a "willful and deliberate disregard" of the evidence submitted "which one of ordinary intelligence could not possibly have avoided in reaching a result." *Pocono Manor Investors, LP v. Pennsylvania Gaming Control Board*, 927 A.2d 209, 216 (Pa. 2007).

508, 701-704,] is *not* whether its order was reasonable, but whether it was made in "accordance with law" (i.e., whether it was made in bad faith, and whether it was fraudulent or capricious). [A] reviewing court may interfere in an agency decision only when "there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions."

*Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362, 365 (Pa. 1991) (emphasis in original and citation and footnotes omitted). If "[i]t is self-evident that the board's decision was not capricious or a flagrant abuse of discretion, . . . it is not for this court or any reviewing court to substitute its judgment of what is reasonable for that of the agency whose decision is being reviewed." *Id.* at 366.[7]

Section 42(a)(3) and (4) of the Act provides, in pertinent part:

**(a) Authorized actions.**—When the [B]oard is empowered to take disciplinary or corrective action against a [B]oard-regulated practitioner under the provisions of this act[,] the [B]oard may:

\* \* \*

(3) Revoke, suspend, limit or otherwise restrict a license[.]

(4) Require the [B]oard-regulated practitioner to submit to the care, counseling or treatment of a physician or a psychologist designated by the [B]oard.

---

[7] *See also Bethea-Tumani v. Bureau of Professional and Occupational Affairs, State Board of Nursing*, 993 A.2d 921, 932 (Pa. Cmwlth. 2010) ("A board may give greater weight to the seriousness of a respondent's criminal convictions than to mitigating evidence. Absent bad faith, fraud, capricious action or flagrant abuse of discretion, a reviewing court will not inquire into the wisdom of an administrative agency's discretionary action or into the details or manner of executing that action. The Court may not reweigh the evidence presented. The Court, moreover, may not substitute its judgment for that of the board.") (citations omitted).

11

63 P.S. §422.42(a)(3), (4). *See also* Section 43(a) of the Act, 63 P.S. §422.43(a) ("[T]he [B]oard shall not reinstate the license . . . of a person to practice medicine and surgery . . . which has been revoked. . . . [A]ny person whose license . . . has been revoked may apply for reinstatement, after a period of at least five years[.]").

As outlined above, the Pennsylvania Board extensively and exhaustively explained the evidence, authority, and rationale underlying its order revoking Doctor's license to practice for five years and outlining the conditions under which it may be reinstated. *See* C.R. Item 30 at 9-10. Because it is self-evident that the Pennsylvania Board's order is not capricious or a flagrant abuse of its statutorily authorized discretion, this Court will not accede to Doctor's request to substitute his judgment or our judgment for that of the Pennsylvania Board. *Slawek*; *Bethea-Tumani*.

Accordingly, the Pennsylvania Board's order is affirmed.


Judge Cohn Jubelirer did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hil Rizvi, M.D.,                                  :
                                                  :
                    Petitioner                    :
                                                  :
          v.                                      :  No. 1378 C.D. 2018
                                                  :
Bureau of Professional and                        :
Occupational Affairs, State Board                 :
of Medicine,                                       :
                                                  :
                    Respondent :

**PER CURIAM**

# **O R D E R**


          AND NOW, this 1<u>st</u> day of <u>May</u>, 2020, the order of the Bureau of
Professional and Occupational Affairs, State Board of Medicine (Pennsylvania
Board) dated September 12, 2018, is AFFIRMED.  The October 22, 2018 order of
this Court granting Petitioner Hil Rizvi, M.D.'s Emergency Motion for Stay
Pending Appeal, and staying the Pennsylvania Board's September 12, 2018 order,
is VACATED.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hil Rizvi, M.D.,                         :
                    Petitioner           :
                                         :
         v.                              :    No. 1378 C.D. 2018
                                         :    Submitted: July 26, 2019
Bureau of Professional and Occupational  :
Affairs, State Board of Medicine,        :
                    Respondent           :

OPINION NOT REPORTED

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: May 1, 2020

        I write separately to express concern over the reciprocal disciplinary
provision set forth in Section 41(4) of the Medical Practice Act of 1985 (Act).[1]  This
provision authorizes the State Board of Medicine "to impose disciplinary or
corrective measures on a board-regulated practitioner" for

> [h]aving a license or other authorization to practice the
> profession revoked or suspended or having other disciplinary
> action taken, or an application for a license or other authorization
> refused, revoked or suspended by a proper licensing authority of
> another state, territory, possession or country, or a branch of the
> Federal Government.

63 P.S. §422.41(4).  In *Tandon v. State Board of Medicine*, 705 A.2d 1338 (Pa.
Cmwlth. 1997), this Court explained that under Section 41(4) of the Act, the sole
question is whether the physician was disciplined by another state.  However, "the
charges underlying the actions which took place [out-of-state], and the procedure
utilized in their resolution, [are] completely immaterial to the proceedings before the
Pennsylvania Board."  *Id.* at 1345.

---

[1] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §422.41(4).

Section 41(4) of the Act, as construed in *Tandon*, authorizes the State Board of Medicine to revoke a physician's license for a dress code violation in the other state. Further, the Board may take this action even where the out-of-state proceeding deprived the licensed physician of notice or an opportunity to be heard.

In *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827, 838 (Pa. 2017), our Supreme Court held that the General Assembly must not use "sight unseen" statutory standards. Rather, it must provide "adequate criteria to guide and restrain the exercise of the delegated authority." *Id*. I am concerned that the General Assembly has not given the State Board of Medicine sufficient guidance on how it may use an out-of-state proceeding to discipline a Pennsylvania practitioner. The sweeping language of Section 41(4) of the Act gives the Board unlimited authority to use an out-of-state proceeding to discipline a Pennsylvania practitioner.

_____
MARY HANNAH LEAVITT, President Judge